[No. B205903. Second Dist., Div. Six. Dec. 8, 2008.]

JENNIFER C., a Minor, etc., Plaintiff and Appellant, v.
LOS ANGELES UNIFIED SCHOOL DISTRICT, Defendant and
Respondent.

1322

**COUNSEL**

Steinbrecher & Associates and Mark Lieber for Plaintiff and Appellant.

Gutierrez, Preciado & House and Calvin House for Defendant and Respondent.

**OPINION**

**YEGAN, J.**—A "special needs" child, i.e., a child suffering from mental and/or physical disability, cannot reasonably be expected to take care of himself or herself. Such a child at public school needs help and protection.

This case illustrates the unique vulnerability of such a child and the unique responsibility of a school district to such a child. (*M. W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 520, 521 [1 Cal.Rptr.3d 673].)

Jennifer C. appeals from a summary judgment entered in favor of the Los Angeles Unified School District, respondent. Appellant is a "special needs" student who was sexually assaulted by another "special needs" student on school grounds. She brought an action against respondent alleging negligent supervision and maintaining a dangerous condition of public property. Appellant contends that the trial court erroneously granted the motion for summary judgment because triable issues of material fact existed as to both causes of action. We reverse.

*Facts*

On April 11, 2005, appellant was a 14-year-old student at Virgil Middle School (Virgil) in Los Angeles. She is a person with mental disability. She suffers from hearing disability, aphasia, behavior problems, emotional difficulties and cognitive difficulties. However, she could function at public school on a "borderline" basis. She was not entitled to one-on-one supervision. During lunch break, which lasted 30 minutes, appellant was "mainstreamed." This meant that she was allowed to interact with the general education student body.

After finishing her lunch appellant was approached by Tony J., another "special needs" student who said that he wanted to talk to her. Appellant did not know Tony J. and had never seen him on campus. She did not appreciate the danger of his request to follow him to a secluded area.

Tony J. led appellant across the school campus to a concrete stairway on the school's border. They walked down the stairway and went into a space, i.e., an alcove, under the stairway. A chain-link fence separated the alcove from an adjoining public sidewalk. The alcove was not visible from the Virgil campus. But anyone walking along the adjoining public sidewalk would have had an unobstructed view of the alcove. Inside the alcove, Tony J. sexually assaulted appellant.

A parent walking along the sidewalk told a school official that two students were having sex inside the alcove. The school official notified Maria Sanchez, a campus aide. Sanchez walked to the alcove, where she saw appellant and Tony J. seated on the ground. "[Appellant's] skirt was up above her waist, and Tony's pants were unzipped exposing his boxer shorts." Tony J. ran away. Sanchez took appellant to the dean's office. Appellant told assistant principal Arturo Valdez that Tony J. had sexually assaulted her.

Nineteen Virgil employees and volunteer parents had been assigned to provide supervision during the lunch break. Sanchez and three other adults had been assigned to supervise the particular area where the alcove was located. In addition, a former principal and two assistant principals "walked around and monitored the entire campus during the lunch break."

The end of the lunch break was marked by the ringing of a bell. A tardy bell rang six minutes later, and at that time a "tardy sweep" of the campus was supposed to have been conducted to assure that all students were in class.

Assistant principal Phil Toyotome was aware that students could attempt to evade school supervision by hiding in the alcove. This was a "problem area" and so he asked Sanchez to regularly check the alcove during the 30-minute lunch break. On April 11, 2005, Sanchez checked the alcove five times, or approximately once every six minutes. No one was there. Her final check occurred approximately three minutes before the bell rang to mark the end of lunch break. About 14 minutes after the final check, she found appellant and Tony J. inside the alcove. The area around the alcove was marked by a bright yellow chain to indicate that students were not allowed there. The student body had been informed that this area was off-limits during lunch break.

Before April 11, 2005, "neither the Virgil Administration, nor supervision staff charged with supervising the area, was aware of any sexual assaults or other illicit activity occurring during school hours around or under the stairs in question."

*Standard of Review*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their

dispute. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists only if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850, fn. omitted.)

A defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citation.]" (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850; see also Code Civ. Proc., § 437c, subd. (p)(2).) The defendant also "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850.) Where, as here, the burden of proof at trial is by a preponderance of the evidence, the defendant must "present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not . . . ." (*Id.,* at p. 851.) If the defendant carries this burden, the burden of production shifts to the plaintiff "to make a prima facie showing of the existence of a triable issue of material fact." (*Id.,* at p. 850.) The plaintiff must present evidence that would allow a reasonable trier of fact to find the underlying material fact more likely than not. (*Id.,* at p. 852.)

On appeal we conduct a de novo review, applying the same standard as the trial court. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) Our obligation is " ' "to determine whether issues of fact exist, not to decide the merits of the issues themselves." ' " (*Wright v. Stang Manufacturing Co.* (1997) 54 Cal.App.4th 1218, 1228 [63 Cal.Rptr.2d 422].) We must " 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 843.)

*Negligent Supervision*

██ The law with respect to school authorities' duty of supervision to students, in general, is well settled: " ' ". . . California law has long imposed

on school authorities a duty to 'supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection. [Citations.]' [Citations.] [Citations.] The standard of care imposed upon school personnel in carrying out this duty to supervise is identical to that required in the performance of their other duties. This uniform standard to which they are held is that degree of care 'which a person of ordinary prudence, charged with [comparable] duties, would exercise under the same circumstances.' [Citations.] Either a total lack of supervision [citation] or ineffective supervision [citation] may constitute a lack of ordinary care on the part of those responsible for student supervision. . . ." [Citation.]' [Citation.]" (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 934 [80 Cal.Rptr.2d 811, 968 P.2d 522].) Our Supreme Court has recognized ". . . the commonly known tendency of students to engage in aggressive and impulsive behavior which exposes them and their peers to the risk of serious physical harm." (*Dailey v. Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 748 [87 Cal.Rptr. 376, 470 P.2d 360].)

The law with respect to a "special needs" child is still emerging. The general rules above cited surely apply but, are there special rules for the "special needs" child? In *M. W. v. Panama Buena Vista School Dist., supra,* 110 Cal.App.4th 508, the Court of Appeal was confronted with the problem of a "special needs" student who was sexually assaulted in a restroom at a public school prior to the beginning of classes. The jury found that the school district had failed to adequately supervise students before school actually commenced. The school had not undertaken to provide for supervision of children prior to the start of classes. In a comprehensive opinion canvassing the duties of school officials towards students in general, the court turned its attention to the "special needs" student remarking on the "unique vulnerabilit[y]" of such a student (*id.,* at p. 520) and the "unique responsibilities" of school officials to adequately supervise such children (*id.,* at p. 521). The court held: "Given the foreseeability of harm to special education students, the well-settled statutory duty of school districts to take all reasonable steps to protect them, the relatively minimal burden on school districts to ensure adequate supervision for any students they permit on their campuses prior to the start of school, and the paramount policy concern of providing our children with safe learning environments, we find the District owed the minor a duty of care to protect him from an assault on campus. (See *Thompson v. Sacramento City Unified School Dist.* [(2003)] 107 Cal.App.4th [1352,] 1364–1365 [132 Cal.Rptr.2d 748] [articulating factors considered in determining whether duty was owed].)" (*Id.,* at p. 521.) In his dissent Justice Levy saw the majority opinion as ". . . a clear departure from established California law." (*Id.,* at p. 526 (dis. opn. of Levy, J.).) This was so because of the majority's focus on the victim's status without adequate consideration of the foreseeability of the particular type of harm which was inflicted. (*Id.,* at

p. 527.) As we shall explain, we agree with the letter and spirit of *M. W. v. Panama Buena Vista School Dist.*, and disagree with the dissent therein.

■ Generally speaking, the absence of prior similar tortious conduct is one factor pointing to the absence of negligent supervision. "When an injury occurs despite a defendant's efforts to provide security or supervision, it is relatively easy to claim that, ipso facto, the security or supervision provided was ineffective. Without more, such claims fail." (*Thompson v. Sacramento City Unified School Dist., supra*, 107 Cal.App.4th at p. 1370.) Here, there is "more." Given the unique vulnerability of "special needs" students, it is foreseeable that they may be victimized by other students. Where school officials allow a hidden area to be maintained on campus, it is foreseeable that other students may use the hiding place to take advantage of a "special needs" student. School officials were on constructive notice that this hidden alcove was a potential place for victimization, i.e., a "problem area."

Respondent goes one step further and argues that appellant must show, as a matter of law, the same type of conduct or victimization had previously occurred on campus before there can be a finding of foreseeability. Foreseeability is one of the factors in the traditional "duty" analysis. (See *Thompson v. Sacramento City Unified School Dist., supra*, 107 Cal.App.4th at pp. 1364–1365, citing *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561]; see also *Ballard v. Uribe* (1986) 41 Cal.3d 564, 572–573 [224 Cal.Rptr. 664, 715 P.2d 624] [discussion of the court's role and the jury's role concerning duty, foreseeability, and proximate cause].) The types of victimization of a "special needs" child are only limited by the imagination of the "victimizer." This could include teasing, harassment, assault, battery, sexual assault, taking lunch money, or robbery. In this context, it is the "special needs" student's vulnerability to all of the above that gives rise to the duty to adequately supervise and to eliminate hidden areas where victimization can occur.

■ "[A]s a general matter, there is no duty to act to protect others from the conduct of third parties. [Citations.]" (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 235 [30 Cal.Rptr.3d 145, 113 P.3d 1159].) However, a "defendant may owe an affirmative duty to protect another from the conduct of third parties if he or she has a 'special relationship' with the other person. [Citations.]" (*Id.*, at p. 235; see also Prosser & Keeton, Torts (5th ed. 1984) § 56, p. 383 [schools toward their pupils].) In the traditional "special relationship" setting, "the plaintiff is particularly vulnerable and dependent upon the defendant who, correspondingly, has some control over the plaintiff's welfare. [Citation.]" (*Kockelman v. Segal* (1998) 61 Cal.App.4th 491, 499 [71 Cal.Rptr.2d 552].) This is the presenting situation.

■ We do not hold, indicate, or suggest that school officials (1) are the insurers of a "special needs" child's safety, or (2) are strictly liable for injuries suffered by such a student, or (3) owe a higher duty of care with respect to such a child. A "special needs" child at public school needs help and protection. We believe school officials, in theory, would agree with this unremarkable statement. But, in our view, they may need an incentive to drive compliance with the duty to provide adequate supervision. Our ruling today provides that incentive. We hold that maintenance of a hiding place where a "special needs" child can be victimized satisfies the foreseeability factor of the duty analysis even in the absence of prior similar occurrences.

■ In his dissent in the *M. W. v. Panama Buena Vista School Dist.* case, Justice Levy reiterated the statement: "Through hindsight, everything is foreseeable. [Citation.]" (*M. W. v. Panama Buena Vista School Dist., supra,* 110 Cal.App.4th at p. 526 (dis. opn. of Levy, J.).) In our view, there is no need for any hindsight. In the present circumstances, a modicum of foresight shows a probability of victimization. A court's task in determining whether there should be a duty, *vel non,* ". . . is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard v. Uribe, supra,* 41 Cal.3d at p. 573, fn. 6.) This statement from our Supreme Court undercuts the views of the dissent in *M. W. v. Panama Buena Vista School Dist., supra,* 110 Cal.App.4th 508, and is the philosophical underpinning of our holding.

■ Our Supreme Court has indicated that there are a number of considerations which come into play when a court is considering whether or not there is a duty in any given case: "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]" (*Rowland v. Christian, supra,* 69 Cal.2d at p. 113.) We consider these factors: First, we have already indicated that here there was foreseeability predicated not on prior similar occurrences, but rather on the vulnerability of plaintiff. Second, there is a degree of certainty that plaintiff did suffer injury. Third, there is a closeness of connection between defendant's maintenance of the hidden area and the injury suffered. Fourth, there is some degree of moral blame attached to defendant's conduct because defendant could have easily prevented this occurrence from happening in the area by simply blocking access thereto. Fifth, the policy of preventing future harm of

a similar nature to a similar plaintiff is present. Sixth, the burden to defendant and the consequences to the community are acceptable because the goal here is to have safe school grounds not only for "special needs" children, but for all children. Seventh, respondent is a governmental entity and may be self-insured with or without an "excess" insurance policy. The record is silent thereon. Whatever impact the availability of insurance can have here, it does not carry the day one way or the other.

### Expert Declaration Defeats Summary Judgment

Respondent met its "initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850.) Respondent's evidence tended to show that its employees had provided adequate supervision. Appellant was not entitled to one-on-one supervision, and she was main-streamed during lunch breaks. The area around the alcove was marked by bright yellow chains to indicate that it was off-limits, and the student body had been so informed. Sanchez and three other adults had been assigned to supervise this particular area. Sanchez checked the alcove five times, or approximately once every six minutes, during the 30-minute lunch break. No one was there. Her final check occurred about three minutes before the bell rang to mark the end of lunch break. Virgil employees were not "aware of any sexual assaults or other illicit activity occurring during school hours around or under the stairs in question . . . ."

Thus, the burden of production shifted to appellant "to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850.) To meet this burden appellant relied on the declaration of Craig Cunningham, a previously qualified expert on "school safety, supervision, and the analysis of dangers posed by the physical make up of the school environment." Cunningham opined that respondent's employees had negligently supervised appellant and Tony J.

Cunningham declared: "If the supervision was actually done, and done in a reasonable manner, I would have expected that the individuals supervising . . . would have caught [appellant] and Tony [J.] as they walked across campus, passed the yellow chain, into the no student zone, down the stairs and underneath the stairwell. It was unreasonable for the Virgil staff supervising during lunch not to see [appellant] and Tony [J.] before the incident was reported by a bystander walking on the sidewalk." "There is a fourteen minute gap between the time Maria Sanchez reported her last check of the stairwell and the time that she was alerted to the incident. This was unreasonable. Fourteen minutes is too long of a period for this area to go

unsupervised. [¶] The school supervision plan required a tardy sweep . . . . If the tardy sweep was actually done, and done in a reasonable manner, I would have expected that the individuals would have caught [appellant] and Tony [J.] under the stairwell." "The fact that this incident was allowed to occur at lunchtime on campus indicates inadequate supervision."

Cunningham further opined that, because appellant was a special education student, she was particularly vulnerable to sexual assault by another student, and respondent should have known of her vulnerability. Thus, she "required close supervision and monitoring at the time of the incident. . . . She was entitled to supervision during her time in general education, mainstream and lunchtime. There is no evidence that Virgil provided this required and necessary supervision to her."

Cunningham further opined that respondent could not have reasonably assumed that special education students would understand that the area around the stairway was off-limits during lunch: "It is unreasonable to use yellow chains or a no student zone for the supervision of special education students such as [appellant]. There is no evidence that [appellant] was aware of the significance of the yellow chains . . . [or] the no student zone."

In support of his opinions, Cunningham relied on individualized educational plans (IEP's) prepared by respondent for appellant, psychological assessments of appellant, and other school records. Cunningham noted that, on May 21, 2004, the IEP team had met with appellant's mother "to discuss mother's concerns for [appellant's] safety on campus regarding conflicts with students."

Respondent moved to exclude evidence of Cunningham's opinions because (1) he was not qualified as an expert on special education students, (2) he had "failed to disclose the matter relied on in forming the opinion[s] expressed," and (3) his opinions were "speculative," "conclusory," and argumentative. The trial court granted respondent's motion. It declared: "Cunnin[g]ham's opinions on whether [respondent] adequately addressed the provisions of [appellant's] IEPs are incompetent . . . . Mr. Cunningham does not demonstrate any qualifications to give an expert opinion on issues of special education. Thus, there is no evidence supporting [appellant's] contention that the school owed [appellant] a special duty based on her status as a special education student." The trial court also determined that Cunningham's opinions concerning the standard of care were insufficient to raise a triable issue of fact because they were "conclusory," stating, "He does not refer to the standards of practice in the industry, nor does he compare these premises to those of any other school. Mr. Cunningham merely offers the opinion that the

premises might have been made safer than they were, which is true of virtually every premises. Such unsupported opinions do not give rise to a triable issue."

On a summary judgment appeal, we review the trial court's evidentiary ruling for abuse of discretion. (*Geffcken v. D'Andrea* (2006) 137 Cal.App.4th 1298, 1311 [41 Cal.Rptr.3d 80]; *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694 [23 Cal.Rptr.3d 915].) " 'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].)

The trial court abused its discretion in concluding that Cunningham did "not demonstrate any qualifications to give an expert opinion on issues of special education." We doubt that there is any school safety expert who devotes himself or herself to the subcategory of special education school safety. While not determinative, we also observe that the trial court's ruling may be at variance with the rulings of 30 other trial court rulings concerning Cunningham's expertise. It appears that the trial court took a very narrow and stingy view of his declaration. In setting forth his qualifications, Cunningham made it clear that he had consulted with school districts on safety and supervisory issues concerning both general and special education students: "I have personally consulted with more than 80 school districts in 12 states involving issues concerning both general and *special education students*, school curriculum, school safety, school supervision and related topics. I have conducted investigations of school incidents and have analyzed more than 150 cases in the past fifteen years involving issues of school supervision and dangerous conditions on school properties, including cases involving claims of inappropriate sexual or physical contact between students, or students and school personnel. I have personally qualified as an expert in school safety issues on more than 30 occasions in Courts within California alone." (Italics added.)

In considering whether Cunningham's opinions were sufficient to raise triable issues of fact, we must take into account that his declaration was submitted by appellant in opposition to respondent's motion for summary judgment. In these circumstances, the expert's declaration is to be liberally construed. (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 125–126 [59 Cal.Rptr.3d 618].) We must resolve "any doubts as to the propriety of granting the motion in favor of the plaintiff. [Citation.]" (*Id.*, at p. 126.) The requisite of a detailed, reasoned explanation for expert opinions applies to "expert declarations in *support* of summary judgment," not to expert declarations in *opposition* to summary judgment. (*Id.*, at p. 128.) This is because a defendant moving for summary judgment bears the heavy " 'burden of

persuasion that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.' [Citation.]" (*Id.*, at p. 125.) On the other hand, a plaintiff opposing a motion for summary judgment need only raise a triable issue of fact. (See *AARTS Productions, Inc. v. Crocker National Bank, supra*, 179 Cal.App.3d at p. 1065 ["Counter-affidavits and declarations need not prove the opposition's case; they suffice if they disclose the existence of a triable issue."].)

Applying a liberal construction to Cunningham's declaration and resolving any doubts in appellant's favor, we conclude that his opinions were adequately supported by a reasoned explanation and were not "conclusory." The opinions were based on his experience, the facts surrounding the incident, the IEP's prepared by respondent for appellant, psychological assessments of appellant, and other school records.

### *Dangerous Condition of Public Property*

 Appellant's other cause of action alleged that, pursuant to Government Code section 835, respondent was liable for maintaining a dangerous condition of public property. "Under section 835, a public entity . . . is 'liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and [that]: [¶] . . . [¶] (b) [t]he public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.' " (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 146 [132 Cal.Rptr.2d 341, 65 P.3d 807]; see *Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799 [205 Cal.Rptr. 842, 685 P.2d 1193] [plaintiff female student who was sexually assaulted on a stairway from a parking lot which was hidden from view by thick and untrimmed foliage, stated a cause of action for the maintenance of a dangerous condition of public property by a school district which failed to take reasonable protective measures to make the area less conducive to sexual assault].)

Appellant contends that the alcove constituted a dangerous condition because it lacked "proper lighting and visibility," it was a "hidden" area, and "it represented a place for inappropriate activities, as [respondent] recognized by trying ineffectively to keep students away." Appellant asserts: "It would have been inexpensive and feasible to have blocked access to the [alcove]. Once access to the [alcove] is blocked the dangerous condition is remedied."

Respondent met its "initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 850.) Respondent presented evidence tending to show that it was not reasonably foreseeable that a student would be sexually assaulted by another student inside the alcove during lunch break. The alcove was neither dark nor hidden from the public. Photographs show that it was well lit by natural sunlight. The alcove was fully visible to anyone walking along the adjoining public sidewalk. Indeed, a parent walking along the sidewalk alerted school officials to the sexual assault. Sanchez regularly checked the alcove during the lunch break. Moreover, Virgil employees were not "aware of any sexual assaults or other illicit activity occurring during school hours around or under the stairs in question, or any other area on the campus."

The burden of production therefore shifted to appellant "to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 850.) Applying a liberal construction to Cunningham's declaration and resolving any doubts in appellant's favor, we conclude that appellant raised a triable issue of material fact as to whether respondent had maintained a dangerous condition of public property by not sealing off the alcove.

Although the alcove was visible to persons walking along the adjoining public sidewalk, they had no duty to supervise the students. That duty was imposed on school staff, and the alcove was hidden from their view. Cunningham declared: "Following the established standards for school safety and supervision, all hidden areas of the school should be fenced off to ensure that the areas are inaccessible to children. It is unacceptable to allow the stairwell [i.e., the alcove under the stairway] to have remained open and accessible for children to hide out there during lunch or any other time." "If the stairwell was not accessible to school children the incident would not have occurred at school during lunch. The stairwell served no purpose. It was a known trouble spot. . . . [T]he condition created a reasonably foreseeable risk that an assault, sexual assault or rape would occur." "It would have been easy and inexpensive to have completely blocked off access to the stairwell with a chain link fence and a lock. . . . Once access was blocked off the dangerous condition would have been remedied."

Here there is a triable issue of fact as to whether there was a dangerous condition of public property because of respondent's failure to erect a fence or other barrier to prevent students from gaining access to the alcove. "Public entities may be held liable for failure to erect barriers . . . ." (*Constantinescu v. Conejo Valley Unified School Dist.* (1993) 16 Cal.App.4th 1466, 1474 [20 Cal.Rptr.2d 734].) For example, in *Swaner v. City of Santa Monica* (1984) 150

Cal.App.3d 789 [198 Cal.Rptr. 208], there was no fence or other barrier between a beach and an adjacent parking lot owned and operated by public entities. While sleeping on the beach, the plaintiffs were injured by a vehicle that had gained access to the beach through the parking lot. The appellate court concluded that the complaint was not subject to a demurrer because it stated a cause of action for maintaining a dangerous condition of public property: "We cannot say as a matter of law that the [public entities] did not have a 'duty' to erect a barrier between the highway and the beach to protect foreseeable users from the foreseeable use of the beach without due care. We also cannot conclude as a matter of law that the lack of a barrier was not a condition of the property which proximately caused [the plaintiffs'] injuries." (*Id.*, at p. 808, fn. omitted.)

In *Constantinescu v. Conejo Valley Unified School Dist., supra,* 16 Cal.App.4th 1466, we upheld a special verdict finding that the absence of barriers separating students from vehicles in a school passenger pickup area constituted a dangerous condition that had proximately caused the plaintiffs' injuries. The injuries occurred when a car in the pickup area "lurched forward and jumped the curb, causing injuries to children in its path . . . ." (*Id.*, at p. 1469.) We reasoned: "[T]he jury properly found the District had a duty to erect barriers to protect against the danger it knew existed at the site." (*Id.*, at p. 1475.) This duty arose even though no prior accidents had occurred there.

*Bartell v. Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492 [147 Cal.Rptr. 898], is distinguishable. In *Bartell,* a 12-year-old boy was killed while playing a dangerous skateboarding game on a school playground after hours when there was no supervision. The boy had gained access to the playground through either an unlocked gate or a hole in a fence. The *Bartell* court rejected the contention that the school district's failure to prevent access to the playground constituted a dangerous condition of public property: "The injuries were the direct result of the [boy's] dangerous conduct . . . and not of any defective or dangerous condition of the property." (*Id.*, at p. 497.) In *Bartell* the only danger was the boy's participation in the skateboarding game. The playground itself was not dangerous.

■ Based on Cunningham's declaration, there is a triable issue of fact as to whether the alcove here was dangerous because it was hidden from the view of school staff. Marking the area off with a yellow chain and telling a "special needs" child that he or she is not permitted to enter may be unreasonable. By definition, such a child may not be capable of appreciating this admonition. This is tantamount to screaming warnings at a person who has a total hearing disability.

*Conclusion*

Because triable issues of fact exist as to both causes of action, the trial court erroneously granted respondent's motion for summary judgment.

The judgment is reversed. Appellant shall recover her costs on appeal.

Gilbert, P. J., concurred and Coffee, J., concurred in the result only.

Respondent's petition for review by the Supreme Court was denied March 11, 2009, S169784.