Filed 1/14/16  S.E. v. Boys & Girls Clubs of Huntington Valley CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| S.E., a Minor, etc. | |
| Plaintiff and Respondent, | G049893 |
| v. | (Super. Ct. No. 30-2011-00534209) |
| BOYS & GIRLS CLUBS OF HUNTINGTON VALLEY, INC., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, James Di Cesare, Judge.  Affirmed.

Michelman & Robinson, Robin James and Lydia Hachmeister for Defendant and Appellant.

Taylor & Ring, David M. Ring, Louanne Masry; Nokes & Nokes, Shari Elizabeth Nokes; Esner, Chang & Boyer and Holly N. Boyer for Plaintiff and Respondent.

\*          \*          \*

Defendant the Boys and Girls Clubs of Huntington Valley, Inc. appeals from the judgment entered in favor of plaintiff S.E., a minor at all relevant times, following a trial on his complaint for negligence, negligent hiring, retention, plus supervision, and premises liability arising out of a sexual assault by an older child (S.S.) at one of defendant's branches. The jury rendered a special verdict finding defendant negligent and that its negligence was a substantial factor in causing harm to plaintiff. The court denied defendant's motion for new trial.

Defendant contends the judgment should be reversed because the trial court erred by (1) not defining as a matter of law the scope of the duty it owed to plaintiff, (2) denying its motion for a directed verdict, and (3) instructing the jury that it could consider prior similar acts by S.S. in deciding whether defendant acted reasonably. Defendant also argues the verdict is not supported by substantial evidence. We reject defendant's contentions and affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

### 1. General Background

Defendant has several branches where it provides school-aged children with after school and summer activities. The branch where the assault on plaintiff occurred consists of a one-story building with three sets of restrooms, two for staff and one for children. The assault on plaintiff took place in the boys section of the children's restrooms, located across the hall from defendant's activity center.

Defendant assigns one or two recreational aides to the activity center depending on the number of children present. In addition to supervising the activity room, the aides must monitor the hallways, restrooms, and gym doors. They may not leave the room to do so, but must either walk or stand at the edge of the activity room and

2

look down the hallway. At certain locations in the activity room, the aides cannot see down the hallway leading to the restroom.

Each of the other rooms is also monitored by a recreational aide, but the children are free to wander from room to room without checking in or out or telling anyone. The aides are instructed to stay in their assigned rooms at all times, except in an emergency or when authorized by the program director. Most of the recreational aides were college students.

In addition to the recreational aides, the unit and program directors and their staffs are also responsible for "keep[ing] and eyeball on the restroom," as well as ensuring they are clean and functional. John Pham was the unit director from 1999 to 2004. Tanya Hoxsie, defendant's chief executive officer and executive director was his supervisor. Her daughter Shannon Voight (now Rocha but hereafter referred to as Voight) was hired as the program director in March 2003.

*2. The 2000 Incident*

In 2000, three boys, aged 14, 8 and 6, orally copulated each other. The 14 year old also sodomized the other two boys and one of them sodomized him. All of these acts occurred in the same boys' restroom where plaintiff would later be assaulted.

*3. Corrective Measures Taken After the 2000 Incident*

In response to the 2000 incident, the two older children were removed from defendant's programs. Defendant also installed a dome mirror that purportedly would allow staff "to look down the hall and into the bathroom," although evidence suggested the doors to the bathrooms were usually closed.

Additionally, defendant asserted it became more vigilant in monitoring the restrooms. Pham relocated his office so he could "see straight into the activity room and straight into the hallway that led to the restroom." Pham and Voight entered both

3

restrooms, including that of the opposite sex, unannounced "[o]n a regular basis." They each claimed to check the restrooms "about every half hour" such that that the restrooms were checked "basically every 15 minutes at least." S.S. did not recall seeing any of the senior staff checking the restrooms.

Defendant further instructed its staff to use the restrooms, monitor them whenever they passed by, allow one child into a stall at a time, immediately enter a stall if they saw two sets of legs under a single stall, intervene upon hearing noises or seeing a group of children entering the restroom, watch the hallway and traffic near the restrooms, and check the restrooms at random intervals.

Another step defendant claimed to have taken was to post rules in the hallways near the restrooms and review them with the children during weekly assemblies. Plaintiff does not recall the staff going over any rules.

Defendant also adopted a crisis management plan, distributed documents and provided training to staff and parents on how to recognize child abuse or neglect and the procedures to follow in suspected cases.

## 4. The 2003 Incident

S.S. began attending defendant in 2001 when he was eight years old. When he was about 10 years old, he sexually assaulted three boys, beginning with B.M., then A.G. and finally plaintiff. S.S. abused each boy during a different timeframe, with no overlap.

S.S. sexually abused B.M., who was two years younger than S.S. approximately 40 times in a stall in the boys' restroom. The sexual acts committed included sodomy. S.S. knew he could take advantage of B.M. because B.M. "wasn't all there." B.M. had Autism and Asperger's Syndrome. Another child, D.S., would sometimes watch, participate, or act as a lookout when S.S. molested B.M.

S.S. sexually assaulted A.G., also a special needs child, about 20 times. The sexual acts occurred in the boys' restroom and included both sodomy and oral copulation.

During the summer of 2003, S.S. sexually abused plaintiff, who was then eight or nine-years-old and in the fourth grade. S.S. had plaintiff orally copulate him. S.S. then orally copulated and sodomized plaintiff. After S.S. left, plaintiff remained on the ground for a while, then vomited in the hallway as he left the restroom. No one entered the restroom from the time they entered the restroom to the time plaintiff vomited, which he estimated to be "at least [10] minutes, maybe more." After he vomited, a staff member went to his aid and called his father to pick him up. Plaintiff did not tell anyone at the time because he was scared he would get into trouble. He did not return to defendant after fall 2003.

The incidents all took place in defendant's boys' restroom. S.S. chose that location because he knew defendant's staff was not supervising it and he could get away with sexually abusing the boys. He knew the recreational aides were required to remain in their assigned rooms and he never saw any staff in the boys' restroom when he was there. S.S. never got caught in the act and only was excluded from defendant's programs when someone filed a complaint.

At some point in 2003 or 2004, A.G.'s mother advised defendant of the incidents between A.G. and S.S. Defendant notified the Orange County Social Services Agency (SSA). Although Voight knew of the 2000 incident, she told SSA that defendant had not had any reports of similar behavior in the past.

S.S. continued to attend defendant's programs for the next 10 to 14 days. During that time, he was allowed to participate in all of the activities and play in any of the rooms. He was supposed to ask for permission to use the restroom but did not always do so. S.S. was "dropped from [defendant's' program" sometime between February 2003 and May 2003.

5

In 2010, B.M. told Sergeant Michael Parsons, who specializes in sexual assault and crimes involving juveniles, about the abuse by S.S. Parsons interviewed S.S., who admitted to the sexual abuse of both B.M. and A.G. and was arrested.

A year later, plaintiff informed his father about the 2003 assault. The case was assigned to Parsons for investigation. Plaintiff identified S.S. out of a photo lineup and S.S. admitted to sexually abusing plaintiff.

DISCUSSION

1. *Scope of Defendant's Duty*

Defendant concedes it owed a general and heighted duty of care to plaintiff due to plaintiff's status as a child and invitee at the time of the assault. But it argues the trial court erred by not defining the scope of such duty as a matter of law. According to defendant, the court did not identify any specific measures defendant could have taken in addition to the ones already in place; instead, during an in camera hearing concerning defendant's motion in limine to exclude evidence relating to B.M. and A.G. and the fashioning of a limiting instruction, it merely "speculated" what more could have been done and "fail[ed] to perform any duty analysis whatsoever" as to those additional measures.

The contention lacks merit, as it assumes defendant actually took all the actions it claimed it had in response to the 2000 incident. Defendant acknowledged it had a duty to take certain measures to prevent against similar incidents in the future. "The evidence is that an event happened in 2000, in a bathroom, with three boys. The defendant was aware of it and the defendant took certain measures to protect against it, . . . but that raises an issue for the jury to determine, whether or not they were reasonable, whether they were adequate, whether they responded appropriately to it."

6

More significantly, it also raised the issue of whether those measures were actually implemented. During closing argument, plaintiff expressly asserted the evidence showed defendant had not implemented those measures it had previously determined to be reasonably necessary to protect against such harm in the future. While at some point during the course of the action plaintiff may have also suggested some additional measures to be considered, he did not argue those points to the jury.

Based on the evidence and argument presented, a reasonable jury could find that defendant had not implemented the safety procedures it had previously deemed reasonably necessary to address the 2000 incident. The jury was not instructed specifically to make that determination and the special verdict form did not require it to identify defendant's negligent act or acts, but only to find whether defendant was negligent. There is thus no reason to assume the jury did not base its verdict on the theory presented by plaintiff. Defendant has not shown otherwise.

The most fundamental rule of appellate review is that the judgment or order challenged on appeal is presumed to be correct, and "it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) "'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) Defendant has not affirmatively demonstrated the jury found it negligent because it did not take measures in addition to those it had already determined were reasonably necessary. The trial court thus had no reason to identify or conduct a duty analysis of any such measures.

By asking what more it was supposed to do, defendant is actually arguing that it had followed through with everything it said it was going to do and there was nothing more it reasonably could have done; therefore, it met its duty of care. As defense

7

counsel recognized, however, whether defendant met its duty or breached it is a question of fact for the jury.

## 2. Denial of Motion for Nonsuit

Defendant next argues the court erred in denying its motion for nonsuit and sending the case to the jury notwithstanding the lack of evidence on duty, breach, and causation. We review the denial of a motion for nonsuit or directed verdict by evaluating the evidence in the light most favorable to the plaintiff. (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 263.) A defendant is entitled to nonsuit if, as a matter of law, the evidence presented by the plaintiff is insufficient to permit a jury to find in his favor. (*Id*. at pp. 262-263.) The court correctly denied the motion.

### 2.1 Duty

Defendant argues plaintiff failed "to identify any specific measures that [defendant] should have taken," even after the court ruled on its motion in limine, or to present any evidence, expert or otherwise, in support of any such corrective measures. The contention lacks merit for the reasons discussed in section 1.

### 2.2 Breach

Defendant contends plaintiff cannot "prove breach via injury alone." It quotes *Thompson v. Sacramento City Unified School Dist*. (2003) 107 Cal.App.4th 1352, 1370 (*Thompson*), as follows: "When an injury occurs despite a defendant's efforts to provide security or supervision, it is relatively easy to claim that, ipso facto, the security or supervision provided was ineffective. Without more, such claims fail." But *Thompson* did not address the issue of breach and instead focused on the element of causation. "It is fundamental that cases are not authority for propositions not considered and decided." (*Murphy v. City of Alameda* (1992) 11 Cal.App.4th 906, 914.)

8

Defendant also relies on *Jennifer C. v. Los Angeles Unified School Dist.* (2008) 168 Cal.App.4th 1320 (*Jennifer C.*), in which the minor plaintiff, a mentally disabled student, was sexually assaulted by another student in an alcove on school property during the lunch hour. The trial court granted summary judgment for the defendant school district but the appellate court reversed after determining there were triable issues of material fact regarding whether the plaintiff's assault resulted from negligent supervision.

The appellate court determined defendant had presented "evidence tend[ing] to show that its employees had provided adequate supervision. Appellant was not entitled to one-on-one supervision, and she was mainstreamed during lunch breaks. The area around the alcove was marked by bright yellow chains to indicate that it was off limits, and the student body had been so informed. Sanchez and three adults had been assigned to supervise this particular area. Sanchez checked the alcove five times, or approximately once every six minutes, during the 30-minute lunch break. No one was there. Her final check occurred about three minutes before the bell rang to mark the end of lunch break. [School] employees were not 'aware of any sexual assaults or other illicit activity occurring during school hours around or under the stairs in question.'" (*Jennifer C., supra*, 168 Cal.App.4th at p. 1330.)

This shifted the burden of production to the plaintiff. To carry this burden, the plaintiff presented the declaration of an expert, who attested that if all of these measures had in fact been taken and done in a reasonable manner, the supervising individuals would have caught plaintiff and the perpetrator, and it was unreasonable for them not to do so. (*Jennifer C., supra*, 168 Cal.App.4th at pp. 1330-1331.) *Jennifer C.* concluded the trial court had abused its discretion in excluding the expert's declaration and held it was sufficient to raise a triable issue of material fact. (*Id.* at pp. 1331-1333.)

Here, defendant argues that it "presented evidence that it acted with care," but unlike *Jennifer C., supra,* 168 Cal.App.4th 1320, plaintiff "did not produce any

evidence (expert or otherwise) of any different action that [defendant] should have taken." But evidence of alternative actions defendant could have taken is unnecessary where the jury could reasonably find defendant did not comply with the safety measures it claimed to have taken in response to the 2000 incident.

First, defendant asserted it discussed restroom rules with the children during weekly assemblies. Plaintiff did not remember the staff going over any rules at the assemblies.

Second, defendant installed a dome mirror to allow its employees to see inside the bathrooms because the doors were "almost always open." But Pham acknowledged, "you had to open the door to get into the bathroom" and conceded that a staff member would not be able to use the dome to see into the restroom if the door was closed. The dome mirror was also installed in the hallway and thus provided no view into the boys' restroom.

Lastly, defendant claimed that between Pham and Voight, the restrooms were checked "at least" "every 15 minutes." Defendant also instructed its staff to use the restrooms and check them whenever they passed by, as well as and at random intervals. But S.S. testified he did not recall seeing any of the senior staff checking the restrooms. In fact, he never saw any staff in the boys' restroom. S.S. specifically chose that location because he realized he could get away with it there, as he knew defendant's staff was not supervising it and the recreational aides were required to remain in their assigned rooms. To that end, he never got caught and defendant only dropped him from the program. As a result, he was able to commit no less than 61 molestations of three separate boys in an approximately one-year span.

Based on these facts, a jury could reasonably conclude defendant had breached its duty to provide reasonable safety measures because its employees did not comply with the measures they claimed to have provided. Credibility issues lie within

the sole province of the jury.  (*OCM Principal Opportunities Fund, L. P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 867.)

Defendant maintains, "[e]ven if all of [its] evidence of its post-2000-Incident measures were deemed disbelieved and thus subtracted from the evidence, such subtraction would not cure [plaintiff's] failure to prove breach of duty."  This statement is puzzling.  If there was no evidence of any measures taken after the 2000 incident, defendant would have breached its admitted duty to provide security measures at the outset and there would be nothing more for plaintiff to prove with respect to breach.

### 2.3.  Causation

Relying on a number of premises liability cases, defendant asserts plaintiff did not prove causation because "proof of an injury, without more, fails to establish the required casual link between a defendant's supervision and the plaintiff's injury." Although the causation principles set forth in those cases apply to cases against a school district (see *Thompson*, *supra*, 107 Cal.App.4th at p. 1371), the causation requirement "does not impose an impossible burden on an injured student; the requirement merely precludes recovery where it cannot properly be said that an injury has been caused by negligent supervision.  For example, where a school fails to provide supervision and an injury results from conduct that would not have occurred had supervision been provided, liability may be imposed.  [Citations.]  Where supervision is provided but the supervisor allows dangerous conduct to go on, liability may be imposed."  (*Id*. at pp. 1371-1372.)

Applying this rationale here, the jury could have reasonably found causation by determining that plaintiff was sexually assaulted as a result of defendant's failure to supervise the restroom, as testified to by S.S.  Alternatively, it could have found defendant provided supervision but allowed the sexual assaults to continue because the supervision was inadequate.  Either way, the court did not merely "allow[ plaintiff] to

11

prove [defendant's] preventative/security measures caused [plaintiff's] injuries via proof that [S.S.] molested [plaintiff] and two other children," as defendant contends.

## 3. Jury Instruction on Prior Similar Acts by S.S.

On defendant's motion in limine to exclude evidence related to B.M. and A.G., the court ruled it would "allow limited testimony regarding prior incidents at [defendant]" and ordered counsel to confer on a limiting jury instruction.

Plaintiff submitted the following limiting instruction: "You have heard evidence that [S.S.] sexually assaulted two boys, B.M. and A.G. at [defendant]. If you determine that it is true that these sexual assaults occurred to one or both boys, you can only consider it to determine whether the measures taken by [defendant] in response to the 2000 incident were reasonable." Defendant objected to this instruction and proposed an alternative one.

The court adopted plaintiff's proposed instruction. Although defense counsel stipulated to the wording, it reserved its objection to the court's giving of the instruction.

The instruction was the result of the court's agreement to fashion a limiting instruction in response to defendant's request to exclude the evidence as irrelevant and prejudicial. But defendant does not now challenge the admissibility of the evidence regarding S.S.'s prior sexual assaults against A.G. and B.M.

Rather, defendant contends the court erred in giving this instruction because it "invited the jury to bypass the breach and causation issues of negligence and instead find [defendant] negligent solely based on injuries" to S.S.'s victims. It does not. It specifically instructs the jury it may consider the evidence, should it find S.S. sexually assaulted A.G. and B.M., only to determine if defendant's measures in response to the 2000 incident were reasonable. To that end, the limiting instruction proposed by defendant instructed the jury that they "may not consider [evidence of B.M. and A.G.'s

12

sexual assaults] to establish that [defendant] was negligent in relation to the specific assault involving [p]laintiff" but if the jury finds that the assaults occurred, it "may consider the evidence to determine whether or not the measures taken by [defendant] in response to the 2000 incident were reasonable." The second part of the defendant's proposed instruction says the same thing as the instruction defendant is complaining about. Thus, both proposed instructions sought to narrow the jury's consideration of the evidence, not to bypass the elements of a negligence claim.

Because we conclude no error occurred in the giving of the instruction, we need not address defendant's claims of prejudice.

*4. Substantial Evidence*

Defendant argues substantial evidence does not support the verdict. We disagree.

"'In reviewing the evidence on appeal, we resolve all conflicts in favor of the prevailing party, and we indulge in all legitimate and reasonable inferences to uphold the finding if possible. Our power begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, that will support the finding. When two or more inferences can be reasonably deduced from the facts, we cannot substitute our own deductions for those of the trial court.'" (*Garcia v. Seacon Logix, Inc*. (2015) 238 Cal.App.4th 1476, 1483-1484.)

Here, defendant acknowledges S.S.'s testimony "arguably contradicts" its evidence regarding the inspections of the restrooms, but claims S.S. "impeached himself" in various ways and thus his testimony was "inherently implausible." This is nothing more than a request that we reweigh the evidence, which we will not do.

13

DISPOSITION

The judgment is affirmed.  Respondent shall recover his costs on appeal.


RYLAARSDAM, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

14