Filed 7/8/15  Wiesjahn v. Goodyear Tire & Rubber Co. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JUDD WIESJAHN, et al.,<br><br>　　　Plaintiffs and Appellants,<br><br>　　　v.<br><br>GOODYEAR TIRE & RUBBER COMPANY,<br><br>　　　Defendant and Respondent. | H040138<br>(Monterey County<br>Super. Ct. No. M95923) |

Plaintiffs Judd Wiesjahn and Analisa Sand brought this action against multiple defendants including Goodyear Tire & Rubber Company (Goodyear), alleging that Goodyear's defectively designed spare tire was responsible for the death of their daughter in a car accident.  Goodyear obtained summary judgment on the ground that there was no competent evidence that the tire was defective or that it was the cause of their daughter's death.

On appeal, plaintiffs contend that their expert's declaration and their discovery responses were sufficient to create triable issues of fact regarding the defective design of the tire and its contribution to the accident.  We cannot find a material triable issue here and therefore must affirm the judgment.

*Background*

Because this appeal arises from a grant of summary judgment, our summary of the history of the case is drawn from the parties' separate statements of undisputed facts and

the accompanying evidence.[1]  At 1:30 a.m. on August 28, 2008, plaintiffs' daughter, Rachel Wiesjahn, was a passenger in a 2006 Chevrolet HHR driven by Christopher Tindall.  About a week earlier, Tindall had replaced the driver's-side front tire with a convenience spare tire that had come with the HHR.

Tindall had been drinking alcohol at a local pub that night, before giving a ride to Rachel and another passenger, Sean Willig.  According to Tindall, as he drove southbound on Highway 1 in the Big Sur area, a northbound vehicle entered the southbound lane in front of him, and he swerved to the right to avoid a head-on collision.[2]  Although he did not experience any handling problems or loss of control, the HHR ran up the embankment next to the roadway and rolled over, landing on the driver's side.

At Tindall's inquiry both passengers said that they were okay, and the three began to get out of the vehicle.  Rachel was able to exit fully and she stood just south of the HHR.  Just then a truck driven by Mark Hudson struck the HHR, causing the HHR to spin.  Tindall got out on the right side instead; but as he did, he saw Rachel lying on her back between the HHR and the embankment.  Willig was trying to crawl out of the HHR when it was struck; he was thrown clear of the vehicle but was not seriously injured.  He found Rachel partially underneath (but not touching) the HHR on the embankment side.

---

[1]  In this undertaking we find no assistance from plaintiffs' opening brief, which provides two sentences describing what happened, with no citation to *evidence* in the record where the asserted facts may be found.  We will on this occasion disregard plaintiffs' complete failure to comply with California Rules of Court, rules 8.204(a)(2)(C) and 8.204(a)(1)(C).  Goodyear's brief itself is not exempt from this failing, as some of the asserted facts are deficient by not citing the location of those facts in the record.

[2]  Willig, testifying at a preliminary hearing in the criminal prosecution of Hudson and Tillman, did not recall seeing an oncoming vehicle from his position in the front passenger seat.  Theodore Rocha, a California Highway Patrol officer who responded to the scene, testified by deposition that he believed the cause of the rollover to be Tindall's state of intoxication, not the approach of an oncoming vehicle.

Paramedics arrived at the scene, but Rachel was already dead. Both the examination by the coroner at the scene and the autopsy by the forensic pathologist indicated that Rachel had died as a result of the second accident.

Tindall and Hudson both fled the scene of the accident. Each was subsequently charged with vehicular manslaughter with injury, driving under the influence of alcohol with injury, and hit and run resulting in injury. Tindall eventually pleaded no contest to vehicular manslaughter while intoxicated (Pen. Code, § 191.5) and leaving the scene of an accident resulting in injury or death (Veh. Code, § 20001, subd. (b)(2)).

Plaintiffs initiated this action in December 2008, naming Tindall, Hudson, and other individuals associated with the events. Their second amended complaint, filed August 27, 2009, added General Motors, Chevrolet, and Goodyear as defendants. Plaintiffs asserted wrongful death along with a survival action claiming expenses and loss of earnings incurred by Rachel as a result of defendants' negligence.

Goodyear answered the complaint and then moved for summary judgment, on the grounds that there was no evidence of a defect in its tire and no evidence that the tire caused or contributed to either of the successive accidents. Plaintiffs opposed the motion, relying on the declaration of Clifford Stover, their proffered expert in mechanical engineering, as "substantial evidence of negligence and product defect (both design and manufacturing)," which caused the HHR to become unstable and "more prone to roll over [sic] accidents." Also based on Stover's analysis, plaintiffs asserted inadequate testing of the tire by Goodyear and its failure to warn consumers not to place the tire on the front of the vehicle.

In reply, Goodyear disputed the qualifications of Stover to express an expert opinion on the issues in the case. The superior court agreed and sustained Goodyear's objection to every paragraph of Stover's declaration other than those pertaining to his professional history. On July 19, 2013, having found no prima facie evidence of defect, negligence, or causation, the court granted Goodyear's motion. This appeal followed.

3

*Discussion*

1. *Appealability*

Plaintiffs filed their notice of appeal on August 23, 2013, representing that they were appealing from a "judgment after an order granting a summary judgment motion." In fact, judgment had not been entered at that time. An order granting summary judgment is not appealable. (*Allabach v. Santa Clara County Fair Ass'n* (1996) 46 Cal.App.4th 1007, 1010.) Nevertheless, because a judgment was subsequently filed on September 4, 2013, we will exercise our discretion to construe the premature notice of appeal as pertaining to the actual judgment. (Cal. Rules of Court, rule 8.104(d)(2).)

2. *Standard and Scope of Review*

Code of Civil Procedure section 437c permits a court "to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) The motion will be properly granted if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.) When the moving party is the defendant, the motion will be granted if one or more of the elements of the cause of action cannot be separately established or the defendant establishes a complete defense to that cause of action. (Code Civ. Proc., § 437c, subds. (o), (p)(2); *Aguilar*, *supra*, at p. 850; *Truong v. Glasser* (2009) 181 Cal.App.4th 102, 109.) When reviewing a trial court summary judgment ruling, we " 'independently determine the construction and effect of the facts presented to the trial court as a matter of law.' " (*Washington Mutual Bank v. Jacoby* (2009) 180 Cal.App.4th 639, 643, quoting *Kolodge v. Boyd* (2001) 88 Cal.App.4th 349, 356.)

The sequence of plaintiffs' arguments on appeal indicates a lack of understanding of summary judgment procedure. Their attack on the judgment begins with a lengthy discussion of the evidence supplied by their expert, Clifford Stover, arguing that the court

4

should have liberally construed his declaration and thus found triable issues of fact regarding the asserted tire defects. Plaintiffs further challenge the court's determination that Stover's expertise had not been established.

Their approach on appeal, however, is backwards. In order for the superior court to have considered the qualifications and opinion of plaintiffs' expert, it first had to determine that the moving party, Goodyear, had presented "evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence' " to support a necessary element of the cause of action. (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003, quoting *Aguilar*, *supra*, 25 Cal.4th at p. 854; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) Only if the moving defendant makes that showing does the opposition come into play. (See *Intrieri v. Superior Court* (2004) 117 Cal.App.4th 72, 82 [If moving defendant fails in its initial showing, "it is unnecessary to examine the plaintiff's opposing evidence and the motion must be denied"]; *Kerkeles v. City of San Jose* (2011) 199 Cal.App.4th 1001, 1009 [same].) Then the burden shifts to the plaintiff to make a prima facie showing that there exists a triable issue of material fact. (*Aguilar*, *supra*, at p. 850.)

On appeal, we conduct a de novo review of the record to "determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National, Inc.*, *supra*, 24 Cal.4th at p. 334; *Daly v. Yessne* (2005) 131 Cal.App.4th 52, 58.) We apply the same procedure used by the trial court: We examine the pleadings to ascertain the elements of the plaintiff's claim; the moving papers to determine whether the

5

defendant has established facts justifying judgment in its favor; and, if the defendant did meet this burden, plaintiff's opposition to decide whether he or she has demonstrated the existence of a triable issue of material fact. (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 84-85; *Varni Bros. Corp. v. Wine World, Inc.* (1995) 35 Cal.App.4th 880, 887.)

With these long-settled principles in mind, we turn first to the allegations against Goodyear in plaintiffs' second amended complaint. In the first cause of action for wrongful death plaintiffs alleged that Goodyear, Chevrolet, and Chevrolet's parent company, General Motors, were responsible for Rachel's death because they were negligent in "the design, manufacture, testing, sale, distribution, warnings, and failure to recall the subject vehicle and tire." Because "[t]he subject vehicle and/or tire were defective," these defendants "wrongfully killed" Rachel and proximately caused plaintiffs' "wrongful death damages." In the second, "survival" cause of action plaintiffs alleged that Rachel had incurred "expenses [and] a loss of earnings prior to her death."[3]

3. *Goodyear's Showing*

In moving for summary judgment Goodyear argued that discovery had produced no evidence that the convenience spare tire was defective or that plaintiffs' injuries were the result of the functioning of the tire. Instead, plaintiffs had supplied only conclusory responses reiterating its dangerousness as the cause of Rachel's death. On the contrary, Goodyear maintained, the initial accident occurred as a result of Tindall's swerving to the right. The second, of course, occurred when the overturned HHR was lying on its side, "pretty much taking up the whole right-hand side of the road."

Goodyear supported its position with abundant evidence relating to both the tire and the accident. Joseph G. Dancy testified by deposition that the tire had been tested

---

[3] Neither party finds it necessary to discuss this second cause of action. Nor do we, since Rachel, having been killed immediately, could not have incurred either expenses or loss of earnings after the accident.

pursuant to the applicable federal safety standards, and it had passed. According to those standards, it was the vehicle manufacturer, in this case General Motors, that determined which tires, wheels, inflation pressures, and loads a tire must carry on a specific vehicle. Goodyear only supplied the tires, in accordance with the specifications provided by General Motors.

Evidence relating to causation was also discussed in Goodyear's motion. The shoulder between the fog line of the roadway and the embankment was only one foot wide. California Highway Patrol officers Theodore Rocha and Christopher Browning, who responded to the scene, each testified that he saw no defect in the spare tire nor any indication that the tire played any role in causing the accident. Tindall, interviewed in jail, never mentioned any difficulty controlling the HHR that night. Tindall himself provided a declaration in which he stated that "[t]he spare tire on the HHR did not create any handling problems leading up to or at the time of the accident, nor did I lose control of the HHR as the result of any issues with the convenience spare tire. I simply had to purposefully turn the HHR to the right in order to avoid the on-coming vehicle and I would have done so regardless of whether . . . there was a convenience spare tire on the HHR at the time." Both officers believed that Mark Hudson's state of intoxication played a role in the second accident.

Goodyear also pointed to plaintiffs' responses to interrogatories. When asked in form interrogatories if they had information that any malfunction or defect in a vehicle caused the "INCIDENT" or contributed to the injuries sustained, each only asserted that the HHR, when used in conjunction with the spare tire, was "susceptible to a loss of vehicle control," the vehicle and tire were "unreasonably dangerous and defective," and the vehicle as equipped "lacked proper warnings regarding the danger." When asked by special interrogatory in what way the tire was defectively designed and manufactured, how these defects contributed to their injuries, and how Goodyear was liable on a "failure

7

to warn" theory, the same conclusory assertions were made, essentially replicating the allegations in plaintiffs' complaint.

Goodyear thus met its initial burden to establish entitlement to judgment as a matter of law. Plaintiffs' factually devoid discovery responses were prima facie evidence that plaintiffs "[do] not possess, and cannot reasonably obtain, needed evidence" to support their claim. (*Aguilar*, *supra*, 25 Cal.4th at p. 854; *Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 106.) Goodyear also produced affirmative evidence through Dancy, the investigating CHP officers, and Tillman that the spare tire was sound and that it had nothing to do with either the initial rollover or the ensuing collision with Hudson's truck. The superior court properly determined that the burden shifted to plaintiffs to establish a triable issue of fact requiring trial.

*Plaintiffs' Showing*

As noted earlier, plaintiffs relied on the declaration of Clifford Stover in their opposition in an effort to present evidence that the spare tire on the HHR was "defective and negligently designed, manufactured and sold" and that its "defects/negligence substantially caused and/or contributed to the accident." Stover was a registered professional engineer with over 20 years of experience in "analysis, testing, and inspection of mechanical systems." Stover's investigation of the accident consisted of a review of Goodyear's moving papers, the traffic collision reports, a supplemental report by an accident investigation team of the CHP, and Dancy's deposition. Those materials convinced Stover that there was "substantial evidence of a design defect, and/or a manufacturing defect, and negligence on the part of the tire manufacturer with regards [*sic*] to the convenience spare identified as the 'Goodyear Convenience Spare T115/70D 15 90M' that was in use as the front left tire on the vehicle that was involved in the accident in this case." He explained that Goodyear's negligence caused the accident

8

because the HHR was made unstable by the smaller tire, which made it more susceptible to rollover accidents.[4] Goodyear was also negligent because it had failed to warn consumers that the tire was defective, failed "to adequately test and investigate stability and roadway driving conditions [before] placing the tire into the stream of commerce," failed to cure the defect, and failed to warn consumers not to place the spare tire on the front axle of a vehicle.

Stover thus concluded that the tire placed on Tillman's HHR was "negligently designed and manufactured and sold," and that its "numerous failures" caused "and/or contributed to" Tillman's loss of control, which in turn "caused and/or contributed to" the rollover.

The superior court sustained Goodyear's objection to key paragraphs of Stover's declaration. First, it determined that Stover had "failed to demonstrate that he is qualified to testify as to tire manufacturing, tire design, tire failure analysis, vehicle design or

---

[4] Stover listed four specific defects: "a. Instability of the vehicle caused by the smaller convenience spare caused the vehicle to be more prone to roll over [*sic*] accidents, which is exactly what happened in this case; [¶] b. Failure to warn that the convenience spare should not be placed on the front axel [*sic*] due to the increased likelihood of roll over [*sic*] due to the lack of stability present when the convenience spare was in use more so on the front axel [*sic*] than the back, which resulted in the tire being placed on that front axel [*sic*] and which resulted in the accident. [¶] c. It is also clear there was a tire bead failure, which, based on the description of the accident and the materials reviewed in this matter is evidence of a catastrophic loss of the tire prior to the rollover, which caused and/or was a substantial contributing factor to the rollover. A bead failure is substantial evidence of either a manufacturing defect and/or substandard design related to the tire in use on a vehicle. [¶] d. The convenience spare tire also had inadequate testing to determine whether they [*sic*] could withstand the forces such as those that were present on the front left tire on the night of the incident. There was a lack of road testing for actual driving conditions all this demonstrates that the tire was negligently placed on the road without sufficient testing on the part of the manufacturer. Had these tires been appropriately tested, the manufacturer would have been aware of the design defects and would have had the opportunity to correct them, such that his [*sic*] accident would not have taken place."

9

vehicle dynamics." The court further pointed out that Stover had not established a foundation for his opinion, "as he had not examined the tire, examined the vehicle, inspected the accident scene[,] or reconstructed the accident. As a result, Mr. Stover's statements are mere conclusions based on assumptions, conjecture[,] and speculation and lack evidentiary value."

On appeal, citing *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 187 (*Garrett*) and *Jennifer C. v. Los Angeles Unified School Dist.* (2008) 168 Cal.App.4th 1320, 1332 (*Jennifer C.*), plaintiffs contend that the court erred by not liberally construing Stover's declaration. Plaintiffs acknowledge, however, that even in the context of a summary judgment motion we review evidentiary rulings for abuse of discretion. (*Garrett*, *supra*, at p. 181.) We find no such abuse here.

The statutory basis for the admission and exclusion of expert testimony is found in Evidence Code sections 801-805. Most relevant here is Evidence Code section 801, which states, "If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: [¶] (a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; and [¶] (b) Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion."

As noted in *Garrett*, in reviewing a summary judgment motion, the court must liberally construe the evidence submitted in opposition with respect to both the admissibility and its sufficiency to create a triable issue of fact. (*Garrett*, *supra*, 214 Cal.App.4th at p. 189, citing *Jennifer C.*, *supra*, 168 Cal.App.4th at p. 1332; see also *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 125-126 [in considering opposition to

10

summary judgment, court liberally construes declarations of plaintiff's experts].)  In light of that rule, an opposing expert's declaration that includes a reasoned explanation "need not be as detailed or extensive as that required in expert testimony presented in support of a summary judgment motion or at trial. [Citations.]" (*Garrett*, *supra*, at p. 189.)  On the other hand, the court does not relinquish its duty to act as gatekeeper in evaluating proposed expert testimony, so as to exclude opinion based on speculation, conjecture, irrelevant material, or unsupported assumptions.  (See *Sargon Enterprises*, *Inc*. *v*. *University of Southern California* (2012) 55 Cal.4th 747, 770-772.)  The expert's opinion "may not be based on assumptions of fact that are without evidentiary support or based on factors that are speculative or conjectural, for then the opinion has no evidentiary value and does not assist the trier of fact. [Citation.] Moreover, an expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based." (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510; accord, *Powell v. Kleinman*, *supra*, 151 Cal.App.4th at p. 123; *Casey v. Perini Corp*. (2012) 206 Cal.App.4th 1222, 1233.)

In this case, Stover's declaration was insufficient to raise a triable issue of fact on either the existence of a defect or proximate cause.  While asserting Goodyear's negligence for failing to test the tire under similar road conditions, he himself did not conduct any such testing or even examination of a tire of the same or similar model. These facts alone distinguish the present case from *Garrett*, *supra*, 214 Cal.App.4th 173, where the plaintiff's expert did perform a detailed examination and testing of the prosthetic device at issue and its composite materials.  Further, Stover's statement that the HHR was unstable was not supported by any evidence, through testing or otherwise, that would have contradicted the evidence supplied by Goodyear, particularly Tillman's statement that he did not lose control of the HHR before it struck the embankment. Likewise, if, as Stover suggested, the smaller size of the spare tire made the HHR

unstable and thus more prone to rollover accidents, it was incumbent on plaintiffs to produce evidence that such cause and effect occurred here. The same can be said regarding the asserted failure to warn consumers not to place the tire on the front axle. No evidence was supplied of (a) the difference in size between the spare and the other three tires; (b) the condition of the other three tires; or (c) a causal link between the position of the tire on the HHR and instability of the vehicle.

In short, even if Stover was qualified to testify in the area of tire design, tire performance, and vehicle dynamics, without some form of accident reconstruction or at least analysis of the performance of a similar tire on a comparable HHR, Stover's opinion regarding the cause of the accident can only be deemed speculative and conjectural. The superior court did not abuse its discretion in ruling the opinion inadmissible.

Plaintiffs next argue that their discovery responses were sufficient in themselves to defeat the motion. They point to two of those responses. The first addressed the question asking them to explain how the tire was defective. The second asked them to identify documents relating to causation. Plaintiffs answered both questions using the language of Stover's declaration.[5] These responses, standing alone, were merely conclusionary and were therefore insufficient. (See *Wiz Technology, Inc. v. Coopers & Lybrand* (2003) 106 Cal.App.4th 1, 11; accord, *Roberts v. Assurance Co. of America* (2008) 163

---

[5] In both responses plaintiffs stated: "The subject vehicle when being used in conjunction with the spare tire was susceptible to a loss of vehicle control, and as such was not suitable for use under normal and foreseeable driving conditions and lacked proper warnings regarding the danger. The vehicle and tire were defective by design, manufacture, and lack of warnings. The Chevrolet HHR was defective and unreasonable [*sic*] dangerous in that it was sold with a defective spare tire; it was unreasonably dangerous in that the vehicle was uncontrollable under certain driving conditions and in particular when being used with the spare tire; the vehicle was unstable, and had a high propensity to lose control. The subject vehicle and/or tire was unreasonably dangerous in their [*sic*] design, and manufacture of component parts including the spare tire. The subject vehicle and/or tire was unreasonably dangerous and defective and there were safer reasonable alterative designs available that would have minimized the hazards."

12

Cal.App.4th 1398, 1404.)  Plaintiffs also answered Special Interrogatory No. 1, which asked them to explain the incident in detail.  Plaintiffs related the facts of the two collisions, but none of them was a disputed material fact, nor did any of them point to Goodyear as responsible for Rachel's death.  At best plaintiffs could only offer their *belief* that the HHR was "unstable, had a propensity to lose control [*sic*], and when used in conjunction with the spare tire was susceptible to a loss of vehicle control, in turn contributing to Defendant Tindall's loss of control of the Chevrolet on August 8, 2008." This answer did not help plaintiffs avoid summary judgment, as it merely set forth the undisputed facts of the accident along with an unsupported assertion that duplicated an allegation of their complaint.  Without more, plaintiffs' *belief* that the vehicle was unstable when driven with Goodyear's tire on it constituted speculation and was thus an insufficient basis for denying summary judgment. (See *Estate of Nelson* (1964) 227 Cal.App.2d 42, 47 ["the rule of liberal construction does not go so far as to permit of a counteraffidavit which merely repeats the allegations of the pleadings or which contains no evidentiary facts at all"].)

In summary, we conclude that Goodyear produced evidence that plaintiffs "[do] not possess, and cannot reasonably obtain, needed evidence" to show that the accident leading to Rachel's death was caused by a defective spare tire designed and manufactured by Goodyear.  (*Aguilar*, *supra*, 25 Cal.4th at p. 854.)  Because plaintiffs were unable to produce competent, admissible evidence raising a triable issue of material fact bearing on this key element of their claims, the superior court properly entered summary judgment for Goodyear.  It is therefore unnecessary to address the parties' dispute over the applicability of the component parts doctrine.

*Disposition*

The judgment is affirmed.

13

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.



_____

WALSH, J.[*]




*Wiesjahn et al. v. Goodyear Tire & Rubber Company*
H040138

_____

[*]Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.